EDWARD P. BATES and Others, Respondents, *v.* SALT SPRINGS NATIONAL BANK of Syracuse and Others, Appellants, Impleaded with Others.

*Mechanic's lien — a contract providing that no payment should be made until proof is furnished that no liens exist — effect thereof, on the rights of lienors.*

On December 5, 1890, the trustees of the Masonic Hall and Asylum Fund entered into an agreement with the firm of Dickison & Allen, whereby the latter agreed to erect a Masonic home for $139,500, payable in twelve installments, eleven to be paid as the work progressed, and the twelfth (which was the sum of $28,500) to be paid when the building was finished and accepted. The contract contained the following provision: "It is also agreed that no payment shall be made hereunder until the said parties of the second part (the contractors) shall have obtained a certificate from the clerk of Oneida county showing that at the date of such payment no liens or claims have been recorded or filed against said premises or building which are then unsatisfied of record."

On February 14, 1891, the contractors assigned to the Salt Springs National Bank of Syracuse the final payment contemplated by the contract as collateral security for present and future indebtedness; notice of which assignment was given to the trustees of the Masonic Hall and Asylum Fund on April 28, 1892.

On May 31, 1892, and at various times between that date and July 17, 1892, materialmen filed liens against the property under chapter 342 of the Laws of 1885.

On June 4, 1892, the contractors assigned to the bank as collateral security all payments due or to become due them, including all claims for extra work; of which assignment the trustees received notice on June 6, 1892, upon which day the contractors abandoned the work, and requested the trustees to finish it, which they did, at a total expense, including $800 allowed as damages for a breach of the contract, of $9,278.82. After allowing this sum there remained due the contractors from the trustees $23,788.49.

On the 6th and 9th days of June, 1892, the bank recovered large judgments against the contractors, and a receiver of their property was appointed.

In an action brought by the lienors to enforce their liens against the funds due the contractors,

*Held*, that the provision in the contract forbidding any payment by the trustees, except on proof furnished by the contractors that no liens existed against the premises, was one intended by the parties to it not only for the protection of the trustees, but also for that of the lienors;

That the rights of the lienors were superior to those of the bank, and that they were entitled to be paid first in the order in which their liens were filed.

APPEAL by the defendants, the Salt Springs National Bank of Syracuse and others, from a judgment of the Supreme Court in

favor of the plaintiffs, entered in the office of the clerk of the county of Oneida on the 28th day of May, 1894, upon the decision of the court rendered after a trial at the Oneida Special Term.

It appeared from the findings of the court that there were originally two actions, one brought by the plaintiff Bates, whose lien was filed on June 6, 1892, and the other by Henry W. Millar and John L. Murray, who claimed to be the assignees of a lien, notice of which was filed by Cahill Brothers May 31, 1892, both being against substantially the same defendants. These actions were consolidated by an order of the court and tried as one action.

*J. William Wilson,* for appellant Salt Springs National Bank.

*William M. Ross,* attorney in person, as receiver and appellant.

*W. S. Andrews,* for appellant Catharine Dickison.

*Risley & Robinson,* for respondent Bates.

*William Kernan,* for respondents Millar & Murray.

*S. M. Lindsley,* for respondent Utica Planing Mill.

MARTIN, J. :

On December 5, 1890, the firm of Dickison & Allen entered into a contract with the trustees of the Masonic Hall and Asylum Fund for the erection of a Masonic home near Utica. The contract price was $139,500, to be paid in twelve installments, eleven of which were to be made during the progress of the work, and the twelfth, which was the sum of $28,500, was to be paid when the buildings were completely finished and accepted.

The contract between the parties also contained the following provision : " It is also agreed that no payment shall be made hereunder until the said parties of the second part [the contractors] shall have obtained a certificate from the clerk of Oneida county showing that at the date of such payment no liens or claims have been recorded or filed against said premises or building which are then unsatisfied of record."

On February 14, 1891, the contractors, Dickison & Allen, by an assignment in writing, which recited, among other things, that by

the contract between the trustees and Dickison & Allen the trustees were to retain out of the moneys which became due from time to time the sum of twenty per cent until the final completion of the contract, at which time the entire sum so retained was to become due and payable, sold, transferred and set over to the Salt Springs National Bank all their right, title and interest in and to the aforesaid "last payment of twenty per cent. pursuant to the terms of the contract," as collateral security for their existing and future indebtedness to the bank. Notice of this assignment was given to the trustees on the 28th of April, 1892. On May 31, 1892, Patrick and William H. Cahill, who were sub-contractors of Dickison & Allen and assignors of Millar & Murray, filed a mechanic's lien upon the building. On June 4, 1892, the Utica Planing Mill also filed a mechanic's lien upon the building and premises. On the same day Dickison & Allen assigned to the bank as collateral security "all payments now and which hereafter may become due and payable upon said contract, including payments due and to become due from time to time during the progress of the erection of said building, and said twenty per cent * * * and also all sums and moneys due, or which may become due, for extras, including labor and materials furnished in the erection of said building." Notice of this assignment was received by the trustees on June sixth. Thereupon Dickison & Allen, finding themselves insolvent, abandoned the work, and requested the trustees to finish the building.

Subsequently, and between June 5 and July 17, 1892, the other liens of the parties, aggregating over $18,000, were filed by the creditors of Dickison & Allen. If the home had been finished on June sixth there would have been due the contractors, including $1,672.92 for extra work, the sum of $33,067.31.

In completing the work upon the building, as the contract permitted them to do, the trustees expended $8,478.82, and it was conceded that they were entitled to $800 as damages for a breach of the contract, thus leaving unpaid thereon the sum of $23,788.49.

A judgment for $27,494.24 in favor of the bank and against Dickison & Allen was recovered and entered in Onondaga county on the 6th of June, 1892. Subsequently, and on the same day, in proceedings supplementary to execution, the defendant Ross was

appointed receiver of the joint and several property of Dickison & Allen, and he duly qualified as such as provided by the order of his appointment.

On the 9th day of June, 1892, another judgment for $10,585.42 in favor of the bank and against Dickison & Allen was entered in Onondaga county, and on the following day the receivership of the defendant Ross was extended to this judgment.

This case was tried before the court without a jury, and it was held that the parties who were lienors by virtue of mechanics' liens filed by them were entitled to be first paid the amount of their respective liens, with costs, and that the bank was entitled only to the balance. The correctness of this decision is challenged by the appellants, who persistently contend that it cannot be upheld either upon principle or authority. This question is the most important one in the case, and if the decision of the trial court was correct, practically the only one that need be considered on this appeal.

The respondents seek to uphold the judgment upon the ground that the amount unpaid upon the contract was not due by reason of the clause in it which provided that no payment should be made until the contractors produced the certificate of the clerk of Oneida county that no liens were unsatisfied. We do not think the judgment can be sustained upon that ground. It may be assumed that, as between the trustees and the contractors, nothing became due until the clerk gave the required certificate, but that in no way aids in solving the question here.

Under the Mechanics' Lien Law (Laws 1885, chap. 342) the filing of the prescribed notice originates the lien, and until this is done the laborer and materialman has no preferential right to be paid out of the sum due the contractor from the owner of the building. If the contract contains no provision to the contrary, and before notice is filed the contractor assigns to a creditor in payment of his debt the whole or any portion of the moneys due or to become due to him on his contract, the assignee is entitled to the same in preference to the lienor. The court cannot extend purely statutory rights, such as are given by that act, beyond the terms of the statute. There is no provision in the statute of 1885 which in any way prevents a contractor from paying his creditors out of the money due or to become due upon his contract to the exclusion of laborers or

materialmen who have not filed liens. (*Stevens* v. *Ogden*, 130 N. Y. 182.)

The question to be determined in this case is whether the amount unpaid on the contract belongs to the bank by virtue of its assignments, or whether it belongs to the lienholders to the extent of their liens. If it belonged to the former, then it was clearly the duty of the court to set aside the liens, so that the bank could procure the proper certificate, and thus obtain the fund to which it was in fact entitled. To say that the bank was not entitled to this fund because it could not procure the proper certificate, in no way established the fact that the fund belonged to the lienholders. It may be, if this action had not been brought, that before the bank could have recovered this fund, it would have been compelled to bring an action against the lienors to have their liens set aside as invalid, upon the ground that there was no fund or property to which their liens attached, and that the existence of such liens was an obstacle to its recovery of the fund to which it had title, which should be removed. But, if so, it has no bearing whatever upon the question in whom the title to this fund rested.

If the judgment in this case can be sustained it must be upon the ground that it was the intention of the parties to the original contract that persons who labored or furnished materials in the performance of the contract should be protected, and that such was the purpose of the provision quoted.

The learned trial judge found : " That the provision above quoted was inserted in the contract to protect the trustees of the Masonic Hall and Asylum Fund in making payments, and was intended for the benefit and protection of all persons, including the parties to this action, who should file in the proper clerk's office lawful liens or claims upon said building and premises against the interests and rights of Dickison & Allen under said contract, and the payments to be made thereunder to them by the said defendant, the Trustees of the Masonic Hall and Asylum Fund." If this finding can be sustained it must be upon the ground that that was a proper construction of the contract. An examination of the provision upon which the court based its decision discloses that the agreement was that no payment should be made until the required certificate was obtained. The provision seems to be one absolutely prohibiting

payment until such certificate is furnished. From this provision can it be properly said that its purpose was the protection of those having liens or claims upon the property as well as the protection of the trustees?

In *Mechanics & Traders' Nat. Bank* v. *The Mayor* (58 How. Pr. 207), where the contractor had assigned to the plaintiff all moneys due or to grow due thereon, the contract contained the following clause: "And the said party of the second part hereby further agrees that he will furnish said commissioner with satisfactory evidence that all persons who have done work or furnished materials under this agreement, and who may have given written notice to the said commissioner, before or within ten days after the completion of the work aforesaid, that any balance for such work or materials is still due and unpaid, have been fully paid or secured such balance. And in case such evidence be not furnished as aforesaid, such amount as may be necessary to meet the claims of the persons aforesaid shall be retained from any moneys due the said party of the second part, under this agreement, until the liabilities aforesaid shall be fully discharged, or such notice withdrawn." In that case it was held that the purpose of this provision was to protect those who had performed labor or furnished materials in the execution of the contract; that the lienors who had filed their claims in accordance with the terms of the contract were entitled to be paid in the order in which their claims were filed, and that the plaintiff, as assignee of the contractor, took subject to the equities existing between the contractor and the parties doing the work and furnishing the materials under the contract, or which, under the contract, the lienors might enforce against him. That case was affirmed by the General Term of the first department (27 Hun, 467).

In *Murphy* v. *Bowery Nat. Bank* (30 Hun, 40), where substantially the same provision was contained in the contract, the same doctrine was held, and persons performing labor and furnishing materials were allowed to recover in preference to the contractor's assignee.

Again, in *Merchants & Traders' Nat. Bank* v. *Winant* (16 N. Y. St. Repr. 902), where the contract contained practically the

same provision, the contractor Gavin assigned to the plaintiff the moneys due and to grow due under such contract, in November, 1875. In July, 1887, the defendant filed notice of lien with the comptroller for the amount due him from Gavin. The plaintiff subsequently brought suit for the balance due upon Gavin's contract, and the defendant was made a party because of the notice he filed with the comptroller, and the principal controversy between the parties was whether the defendant had a lien upon the moneys. It was held by the General Term that under the provisions of the contract, if the defendant had served the notice required, he would be entitled to be protected against the assignment to the plaintiff made before the moneys were earned by the contractor. That court, however, held that the notice was not filed with the proper officer. Upon appeal to the Court of Appeals in that case (123 N. Y. 265), it was held that it was to be assumed that the plaintiff, in advancing moneys to the contractor under the security of the assignment, did so in the belief that the contractor's compensation, over and above his outlays, would reimburse such advances, and that it contemplated only such sums as would belong to the contractor after the discharge of his indebtedness to those engaged under him in doing the work, and that the plaintiff was only entitled to be paid whatever moneys the contractor himself could legally demand of the city under the contract. In delivering the opinion in that case, GRAY, J., said : " Plaintiff must be deemed to have contemplated only such receipts of moneys, from the payments by the city, as would belong to the contractor after the discharge of his indebtedness to employees and others engaged under him in the doing of the work called for. Certainly, any other view of the situation, at the time of the assignment to plaintiff, would seem to involve some expectation by plaintiff of gain through technically defeating the payment of its assignor's just contractual debts. That is not a very moral attitude for it to take ; nor is it one which appeals to the consideration of the court ; and, yet, it would come to that if it should be held that the appellant's claim is not to be paid, for the alleged want of a strict compliance with the contract requisites as to notices of claim. The plaintiff cannot occupy any better position than the contractor would occupy, if he was now demanding payment from the city."

An examination of the case of *Merchants & Traders' Nat. Bank* v. *The Mayor* (97 N. Y. 355) discloses the fact that the provision in the contracts to which we have already referred was required by an ordinance of the city of New York to be inserted in every contract for work for the city, and in that case it was held that the purpose of the ordinance was to secure to persons furnishing labor and materials some of the advantages given by the Mechanics' Lien Law; that where notice had been given the city held the money as trustee for the benefit of the persons giving such notice, and while the city assumed no express liability to them, there was an implied obligation which could be enforced by the court.

Thus the only distinction between the cases cited and the case at bar, except so far as the language employed in the contracts is different, is that the contracts in the cases cited were made in pursuance of an ordinance which required such a clause to be inserted, while in this case the contract was a voluntary one made by the parties without any provision of law requiring it to be made in any given form or to contain any such provision. The appellants contend that as the contracts in the New York cases were made in pursuance of an ordinance of the city which has the force of a statute, and provides for the actual payment to the sub-contractor who entered upon the work with the ordinance in force, it creates a trust fund in the hands of the commissioner and makes him an equitable assignee of the fund for the purpose of paying the debt due the sub-contractor. It may be that such was the effect of the ordinance and contracts in those cases, but the error in the appellants' claim is that they assert that the ordinance provides for the actual payment to the sub-contractor, when in fact neither the ordinance nor the contracts contain any such provision. It only provides for the retention in the hands of the commissioner of a sufficient sum to pay such lienors until their claims are discharged  The distinction contended for by the appellants between those cases and the case at bar is not quite apparent. If the ordinance and contract in those cases are to be construed as making a provision for the protection of the lienors we can see no good reason why a contract voluntarily made between individuals containing the same provision should not be construed in the same way. We are aware    no rule

of construction which would justify a court in holding that the provisions in the New York contracts were to protect the lienors, and at the same time in holding that in a similar contract between individuals such a provision was not for the protection of the lienors.

When we compare the contracts we find that in those considered in the cases cited the provision was that the contractor should furnish the commissioner with satisfactory evidence that all persons who had done work or furnished materials and given notice had been fully paid or secured, and in case such evidence was not furnished the amount necessary to meet the claims should be retained until the liabilities were discharged or the notice withdrawn. In the case at bar the agreement was that no payment should be made until the required certificate had been furnished showing that there were no liens or claims unsatisfied of record. If it was properly held that the purpose of the ordinance of the city and the contract under it was to protect the interest of the laborers and materialmen it would seem that the provision in the contract in this case might well be construed as having for its purpose the protection of the lienors and materialmen, as well as the protection of the trustees. If such was its purpose, then clearly the judgment in this case was right and should be affirmed.

In *Lauer* v. *Dunn* (115 N. Y. 405) by the terms of the contract eighty per cent of the estimated value of the labor and materials furnished was to be paid as the work progressed, and the remaining twenty per cent within thirty days after its completion. The contract also provided that, " In case any lien or liens * * * shall exist upon the property * * * at the time or times when * * * any payment is to be made, such payment, or such part thereof as shall be equal to not less than double the amount of or for which such lien or liens shall or can exist, shall not be payable at the said stipulated times, notwithstanding anything in this agreement to the contrary contained." In that case it was held that the provisions quoted were for the protection of the owner, and meant simply that if when the moneys were payable to the contractor liens existed, the owner might reserve from the fund in his hands double the amount claimed under the liens, and also held that after notice of the assignment of the contractor's interest in the moneys in the owner's hands the owner was bound to apply the fund to the pay-

ment of the claim assigned, and that it could not be paid to the lienors.

While it must be admitted that it is somewhat difficult to distinguish clearly the case last cited from the case at bar, yet it is equally difficult to harmonize the decision in that case with the decisions in the cases previously cited. It is, therefore, not easy to determine whether the case at bar is controlled by the last decision, or by those previously cited. In this case the provision in the contract is different from that in the contract in the case last cited, as in that double the amount was to be retained, thus perhaps showing that its only purpose was to compel the contractor to relieve the owner from any liens that might exist, and in case of their existence it was not to become payable as stipulated, while in the contract in the case at bar the provision was an absolute one that no payment should be made until the proper certificate that there were no liens had been furnished. While the question is a border one, and by no means free from doubt, still we are disposed to hold that the construction placed upon this provision of the agreement by the trial judge was the correct one and that the judgment should be sustained.

As there are no other questions raised by the appellants which need be discussed, we think the judgment should be affirmed.

HARDIN, P. J., concurred.

MERWIN, J.:

I think this judgment should be affirmed, not only upon the ground stated in the opinion of brother Martin, but also on the ground that, aside from the clause referred to in the contract, the equities of the lienors are superior to those of the bank or of the receiver. The liens were filed before the contract was completed and before the moneys were due.

Judgment affirmed, with costs.